The defendant in the lower court has appealed from a judgment rendered against him in favor of a grower of citrus fruit on account of defendant's failure to perform a written contract to purchase a crop growing upon the trees. The contract in question contained this provision:
"It is a condition of this contract that the fruit above described shall be and remain free from any of the following defects, and, it being practically impossible to segregate the good from the bad fruit in picking, this contract shall terminate at the option of the buyer with respect to all unpicked fruit, whether a part is previously picked or not, in the event any part of said fruit, prior to or at the time buyer is ready to remove same within the time above specified is subject to, whether in a degree to render the fruit unmerchantable or in any lesser degree diminishing the intrinsic eating or selling quality of the fruit, any of the following defects:
"(b) Fruit which after the date hereof develops, either for the first time or to a materially greater degree, * * * storm or wind damage."
By plea the defendant averred:
"That on or about December 14, 1946, the defendant was ready to remove the unpicked balance of early oranges and commenced the picking of same within the time limited by the contract for the removal of early oranges and picked about 309 field *Page 891 
boxes of such early oranges on that date and removed them to its packing house in Ocala, Florida, but upon inspection thereof at the defendant's packing house in Ocala, Florida, it was found and defendant alleges that said fruit was very badly wind and storm damaged, said damage being evidenced by thorn pricking, scratching and scarring of said fruit caused by the fruit being thrashed and knocked about on the trees by wind and storm, and that said fruit was so wind and storm damaged to a degree to render the same unmerchantable. That at the time said contract was entered into, to-wit: July 9, 1946, the said fruit had not been subjected to wind or storm sufficient to produce the aforesaid damage and injury to said fruit and was not wind or storm damaged within the meaning of said contract, but thereafter a severe wind storm visited said grove and caused the aforesaid wind and storm damage to said fruit. That pursuant to the aforesaid provisions of said contract, the defendant became and was entitled to terminate the same and did so promptly on discovering the nature and extent of said damage and immediately discontinued the picking of the remaining early oranges and promptly notified the plaintiff of the termination of said contract on December 15, 1946."
The legal sufficiency of that plea was not questioned by the plaintiff. He filed a "joinder of issue" and proceeded to trial.
Appellant now complains that the lower court erred in giving the following charge:
"Gentlemen of the jury, this contract contains this provision and this is the only provision we are interested in "if any part of the fruit prior to and at the time the buyer is ready to remove same above specified to, whether or not a degree to render the fruit unmerchantable or in any lesser degree the intrinsic selling quality of the fruit for any of the following defects" and then it contains this provision of storm damage.
"The Court charges you that that contract means there has got to be such a substantial amount of fruit damaged as to render the crop unmerchantable or impractical in a reasonable way to be handled.
"You gentlemen understand that if the right to terminate this contract existed on December 15th, 1946 on part of the defendant he would have to terminate the entire contract. He couldn't terminate part of it. On the other hand, the burden is on him to prove that that right existed and that a sufficient amount of fruit was wind damaged or storm damaged as to render the crop of fruit unmarketable or impractical in a reasonable way to handle."
The plea in question is an affirmative plea. It is the only affirmative plea in the record, except a plea of payment which was abandoned.
The burden of proving the material allegations of the declaration was upon the plaintiff. The burden of proof in regard to proving any affirmative plea was upon the defendant.
Upon analysis of the plea in question it will be observed that defendant thereby was taking the position that he had a right to abandon the contract on account of storm damage to the 309 boxes of fruit picked December 14th, 1946. By joining issue on the plea, plaintiff accepted defendant's position thus taken as a correct interpretation of the contract. It being an affirmative plea, the burden was upon defendant to prove it, but defendant's burden extended no further than the issues thus tendered and accepted. To hold otherwise would permit a party, by taking a false position, to entrap his adversary.
The charge in question covered issues broader in scope than the plea. The charge required defendant to prove that a substantial part of the entire crop of fruit was storm damaged, whereas by its plea defendant undertook to prove no more than that the 309 boxes picked December 14th, 1946, was storm damaged. Thus what was required of defendant by way of proof was greater under the charge than under the allegations of the plea.
One of the principal aims of pleading in a law suit is to apprise the parties of the issues to be tried so that they may interview witnesses, bring those before the court who may be helpful to the investigation and otherwise prepare themselves for *Page 892 
the trial of previously determined, well defined and certain issues.
By taking issue upon the plea in question, plaintiff has led defendant into the belief that he may prepare for the trial upon the basis of the issues thus formed. If plaintiff may abandon that position at the trial and extend the issues and thereby enlarge defendant's burden of proof, it is obvious that plaintiff has an opportunity to entrap his opponent.
So that just such an impropriety may not occur, it has long been a well recognized rule that the trial must follow the issues framed by the pleadings.
As a corollary to the rule is the proposition that jury instructions likewise must be confined to the issues raised by the pleadings. See Pensacola Electric Terminal Ry. Co. v. Haussman, 51 Fla. 286, 40 So. 196; Jacksonville Electric Co. v. Batchis, 54 Fla. 192, 44 So. 933; Lewter v. Tomlinson, 54 Fla. 215, 44 So. 935; Collins v. Godwin, 65 Fla. 283, 61 So. 632.
In Pensacola Electric Terminal Ry. Co. v. Haussman, supra, this court observed that it had "frequently ruled that a misleading charge on issues substantially variant from those raised by the pleadings is ground for reversal".
In further commenting on the rule in Collins v. Godwin, supra, this court stated: "This doctrine is axiomatic."
The issue as framed by the plea and the joinder of issue in the case at bar was whether or not defendant could prove by a preponderance of the evidence that the fruit picked December 14th, 1946, was storm damaged.
The issue as stated by the court was whether or not defendant could prove by a preponderance of the evidence that a substantial part of the entire crop was storm damaged.
It is plain here that if the investigation is to be confined to the issues made by the plea and the joinder of issue, defendant's course of procedure in preparing for the trial and at the trial, itself, will be materially different from that to be pursued if the investigation is to be extended throughout the broader scope fixed by the court.
Now the defendant had assumed no such burden as was stated in the court's charge. He could assume such a burden only by an affirmative plea. Yet no such plea was filed. Therefore, to charge that defendant must prove that a substantial part of the entire crop was storm damaged is to go beyond the issues framed by the pleadings.
It follows that the charge in question was erroneous because it defined issues broader than those fixed by the pleadings. Therefore the judgment should be reversed.